# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMAND WILLIAMS, | Case No. 1:23-cv-01082-ADA-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS WITHOUT LEAVE TO AMEND |
| v. | |
| ARAMARK CAMPUS LLC, et al., | |
| Defendants. | (ECF Nos. 5, 10, 11, 12, 13) |
| | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

## I.

## INTRODUCTION

Currently before the Court is Defendants Aramark Campus, LLC and Kendall Wright's[1] (collectively, "Defendants") motion to dismiss this action brought pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF Nos. 5, 10.)

Based on the moving, opposition and reply papers, the hearing held on September 27, 2023, and the Court's record, the Court recommends Defendants' motion to dismiss be granted in part and denied in part, and Plaintiff be granted leave to amend his fourth and thirteenth causes of action.

///

---

[1] Plaintiff erroneously spelled Defendant Kendall Wright as "Kendall White" in his complaint.  (Def. Wright's Reply, ECF No. 13 at 2, n.1.)  The Court shall refer to the Defendant as Kendall Wright.

## II.

## BACKGROUND

On June 7, 2023, Plaintiff filed this action in the Superior Court of the State of California, County of Mariposa, Case No. 23-CVCV-0011983.  (ECF No. 1.)  The action was removed to the Eastern District of California on July 19, 2023.  (Id.)

Plaintiff names Aramark Campus, LLC ("Aramark") and Kendall Wright as Defendants. Plaintiff alleges that he worked as a cashier for Aramark located at 9032 Village Drive, Yosemite National Park, California 95389 from 2017 to February 10, 2023.  (Compl. ¶ 12.)  Plaintiff alleges that he injured his right hip at work on July 20, 2021, and was subsequently placed on medical restrictions, which included a reduction of his work hours.  (Compl. ¶¶ 13-14.)  Plaintiff claims Aramark's store manager, Kendall Wright, would either take hours off his schedule or deny his time off requests when he had doctor appointments.  (Compl. ¶¶ 16-17.)  Plaintiff notes that on or about December 23, 2021, another manager, Sabrina, told Plaintiff that his restrictions would no longer be accommodated.  (Compl. ¶ 17.)  Plaintiff alleges that he was placed on a medical leave of absence on January 1, 2022.  (Compl. ¶ 18.)  Plaintiff claims that he communicated with Aramark's human resources director, Shellow Gibson, throughout his leave; however, Aramark failed to communicate with him regarding reasonable accommodations. (Compl. ¶ 19.)  Plaintiff alleges he was terminated via email on February 10, 2023.  (Compl. ¶ 20.)

Plaintiff brings the following sixteen claims: (1) retaliation in violation of California Government Code § 12940, et seq.; (2) retaliation in violation of Labor Code § 1102.5, et seq.; (3) retaliation in violation of the California Family Rights Act ("CFRA"), Government Code § 12945.2(i); (4) retaliation in violation of Family Medical Leave Act, 29 U.S.C. § 2601; (5) disability discrimination in violation of Government Code § 12940, et seq.; (6) failure to prevent discrimination in violation of Government Code § 12940; (7) harassment due to disability in violation of Government Code § 12940 et seq.; (8) hostile work environment in violation of Government Code § 12940 et seq.; (9) failure to accommodate physical disability in violation of Government Code § 12940(m); (10) failure to engage in a good faith interactive process in

violation of Government Code § 12940(n); (11) intentional infliction of emotional distress; (12) negligent infliction of emotional distress; (13) negligent hiring, supervision, and retention; (14) refusal to provide information in violation of California Labor Code § 1198.5; (15) injunction to compel production of employment records; and (16) unfair competition ("UCL").  All causes of action name Aramark and "DOE" defendants.  Only the seventh and eleventh causes of action name Kendall Wright.

On July 26, 2023, Defendant Aramark filed a motion to dismiss this action.  (Def.'s Mot. Dismiss ("Mot."), ECF No. 6.)  On August 8, 2023, Defendant Kendall Wright filed a joinder in defendant Aramark's motion to dismiss as to the two causes of action alleged against her.  (Def.'s Joinder Mot. Dismiss, ECF No. 10.)  On August 23, 2023, Plaintiff filed an opposition to Defendants' motion to dismiss.  (Pl.'s Opp'n Mot. ("Opp'n"), ECF No. 11.)  On September 5, 2023, Defendant Aramark filed a reply to Plaintiff's opposition.  (Def.'s Reply ("Aramark Reply"), ECF No. 12.)  On September 5, 2023, Defendant Kendall Wright filed a separate reply to the opposition.  (Def.'s Reply ("Wright Reply"), ECF No. 13.)

The Court held a hearing on the matter on September 27, 2023.  (ECF No. 16.)  Andrew Magaline appeared on behalf of Plaintiff via video.  (Id.)  Eric Meckley appeared on behalf of Defendant Aramark and Daniel Croley appeared on behalf of Defendant Kendall Wright via video.  (Id.)  The Court took the matter under submission.

### III.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  The pleading standard under Rule 8 of the Federal Rules of Civil Procedure does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply. First, to be entitled to the presumption of truth, the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Id. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988)).

**IV.**

**DISCUSSION**

Defendants seek to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6). Defendants first argue each of Plaintiff's fifteen state-based causes of action arising from his employment at Defendant Aramark's store within Yosemite National Park should be dismissed because they are barred by the federal enclave doctrine. (Mot. 1.)[2] Specifically, Defendants contend that Plaintiff's FEHA claims (first, fifth, sixth, seventh, eighth, ninth, and tenth causes of action); retaliation claim (second cause of action); CFRA claim (third cause of action); intentional infliction of emotional distress claim (eleventh cause of action); negligent infliction of emotional

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

distress claim (twelfth cause of action); negligent hiring, supervision, and retention claim (thirteenth cause of action); failure to provide information claims (fourteenth and fifteenth causes of action); and UCL claim (sixteenth cause of action) should be dismissed with prejudice because they are based on state laws that were enacted after California's cession of Yosemite National Park to the United States federal government, and thus have no application within the federal enclave. (Mot. 14-17.) Alternatively, Defendants argue that Plaintiff's second, eleventh, twelfth, thirteenth, fourteenth, and fifteenth causes of action should be dismissed because Plaintiff failed to plead facts sufficient to support plausible claims against Defendants. (Mot. 18-24.) Defendant Aramark also argues that Plaintiff's derivative unfair competition claim fails because Plaintiff has an adequate remedy at law and is therefore not entitled to equitable relief. (Mot. 24-25.)

As to Plaintiff's sole federal claim, Defendant Aramark contends that Plaintiff's fourth cause of action for retaliation in violation of the Family Medical Leave Act should be dismissed for failure to plead a cognizable legal theory. (Mot. 17-18.)

In response, Plaintiff concedes in his opposition that his FEHA, CFRA, intentional infliction of emotional distress, failure to provide information, and UCL claims (first, second, third, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, fourteenth, fifteenth, and sixteenth causes of action) are barred by the federal enclave doctrine and cannot be replead. (Opp'n 3-4.) However, Plaintiff argues that his twelfth and thirteenth causes of action for negligent infliction of emotional distress and negligent hiring, supervision, and retention are not barred by the federal enclave doctrine because both fall under California's general negligence statute, which was enacted before California ceded the area that is now Yosemite National Park to the federal government. (Opp'n 2-3.) Additionally, Plaintiff explains the pleading deficiencies contained in his remaining fourth, twelfth, and thirteenth causes of action are due to his complaint being originally written under California pleading standards prior to Defendant's removal to federal court. (Opp'n 3,4.) Plaintiff thus acknowledges that his complaint does not comply with federal pleading requirements and requests leave to amend to conform to federal pleading standards and to allege other non-time barred claims applicable within the federal enclave. (Id.)

1    In her reply, Defendant Kendall Wright points out that she is only individually named in

2  Plaintiff's seventh cause of action for harassment under FEHA and eleventh cause of action for

3  intentional infliction of emotional distress.  (Wright Reply 2.)  Following Plaintiff's concession

4  that his FEHA and intentional infliction of emotional distress claims are barred by the federal

5  enclave doctrine and cannot be amended, Defendant Wright argues there are no remaining claims

6  against her, and the case should therefore be dismissed against her with prejudice.  (Id.)

7    **A.    Preliminary Issue of Plaintiff's Untimely Opposition**

8    Defendant Aramark argues as a preliminary matter that Plaintiff's opposition to

9  Defendant's motion to dismiss was untimely and should be stricken or disregarded by the Court.

10  (Aramark Reply 2-3.)  Pursuant to Local Rule 230(c), an opposition to a motion "shall be filed

11  and served no later than fourteen (14) days after the motion was filed."  L.R. E.D. Cal. 230(c).  A

12  party's "failure to file a timely opposition may…be construed by the Court as a non-opposition

13  to the motion."  Id.

14    Defendant Aramark filed its motion to dismiss on July 26, 2023, but Plaintiff did not file

15  his opposition until August 23, 2023, two weeks after the fourteen-day deadline provided by

16  Local Rule 230(c).  As Defendant Aramark notes, Plaintiff provided no explanation in his

17  opposition for his late filing and failure to comply with the local rules.  (Aramark Reply 3.)

18    While the Court normally strikes untimely motions pursuant to Local Rule 230, the Court

19  will exercise its discretion and assess Plaintiff's opposition.  The Court has an independent duty

20  to assess Plaintiff's complaint irrespective of a non-opposition.  In this specific instance, Plaintiff

21  concedes that thirteen of his sixteen claims should be dismissed.  Thus, to consider Plaintiff's

22  concessions, the Court will consider Plaintiff's opposition.  Additionally, while untimely, the

23  opposition was filed five weeks before the rescheduled hearing in the instant matter, and

24  Defendants have not alleged any prejudice due to Plaintiff's untimely opposition.  Accordingly,

25  the Court exercises its discretion provided in Local Rule 230(c) and considers Plaintiff's

26  untimely opposition in deciding Defendants' motion to dismiss.

27  ///

28  ///

B.     **The Application of the Federal Enclave Doctrine to Plaintiff's Fifteen State Law Causes of Action**

The Federal Enclave Clause provides in part that "Congress shall have power…To exercise exclusive Legislation…over all Places purchased by the Consent of the Legislature of the State in which the Same shall be."  U.S. Const. art. I § 8, cl. 17.  "[A] federal enclave is created when the United States assumes exclusive jurisdiction over land within a state."  Perez v. DNC Parks & Resorts at Asilomar, Inc., WL 5618169, at *5 (E.D. Cal. October 31, 2019).  "[W]hen an area in a State becomes a federal enclave…the [state] law in effect at the time of the transfer of jurisdiction continues in force.…Existing state law typically does not continue in force, however, to the extent it conflicts with 'federal policy.'"  Id. at *3 (citing Parker Drilling Mgmt. Servs., Ltd. v. Newton, 139 S.Ct. 1881, 1890 (2019)).  Thus, state laws enacted after cession or transfer of jurisdiction to the federal government "are inapplicable in the federal enclave unless they come within a reservation of jurisdiction or are adopted by Congress."  Steifel v. Bechtel Corp., 497 F.Supp.2d 1138, 1147 (S.D. Cal. 2007); see also Paul v. United States, 371 U.S. 245, 268 (1963) (noting that "state law existing at the time of the acquisition remains enforceable, not subsequent laws").

The parties do not dispute that Yosemite National Park is a federal enclave.  (Mot. 13-14; Opp'n 1.)  Except for certain rights retained by the State of California, the federal government accepted exclusive jurisdiction over "the territory embraced and included within the Yosemite National Park," by June 2, 1920.  16 U.S.C. § 57; see also Collins v. Yosemite Park & Curry Co., 304 U.S. 518, 527 (1938). [3]  Accordingly, Yosemite National Park is a federal enclave in which the federal government has exclusive jurisdiction.

Further, "the federal enclave doctrine only applies when the locus in which the claim

---

[3] In support of its motion to dismiss, Defendant Aramark requests the Court take judicial notice of 16 U.S.C. § 57, which states, in part, exclusive jurisdiction is assumed by the United States over the territory embraced and included within the Yosemite National Park.  (Def. Aramark's Mot. Req. Judicial Notice, Ex. A.)  Judicial notice may be taken of facts not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b).  Here, Plaintiff neither opposes Defendant's request, nor disputes that Yosemite National Park became a federal enclave in 1920.  (Opp'n 2.)  The Court recommends taking judicial notice that Yosemite National Park became a federal enclave on June 2, 1920.

7

1  arose is in the federal enclave itself."  In re High-Tech Employee Antitrust Litigation, 856

2  F.Supp.2d 1103, 1125 (N.D. Cal. April 18, 2012).  Here, there is no dispute that Plaintiff's

3  alleged injuries occurred anywhere other than Aramark's store, which is located within Yosemite

4  National Park at 9032 Village Drive, Yosemite National Park, California 95389.  (See Compl. ¶

5  12.)  Accordingly, any of Plaintiff's claims that are based on state law that were enacted after

6  Yosemite National Park became a federal enclave in 1920 are presumptively barred in the instant

7  action. See Parker Drilling Mgmt. Servs., 139 S. Ct. at 1890 (holding that a state law passed after

8  an area becomes a federal enclave "presumptively does not apply to the enclave").

9        1.    Plaintiff's First, Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, Fourteenth, Fifteenth and Sixteenth Causes of Action Are Barred by the

10            Federal Enclave Doctrine

11        Defendant argues, and Plaintiff concedes, that the following thirteen causes of action are

12  barred by the federal enclave doctrine and cannot be replead on amendment: the first, fifth, sixth,

13  seventh, eighth, ninth, and tenth causes of actions alleging violations of California Government

14  Code, § 12940 (FEHA), enacted in 1980;[4] the second cause of action alleging violation of Labor

15  Code 1102.5, adopted in 1984;[5] the third cause of action, alleging retaliation in violation of

16  CFRA, Government Code § 12945.2(i), enacted in 1993;[6] the eleventh cause of action for

17  intentional infliction of emotional distress, first recognized in 1950;[7] the fourteenth and fifteenth

18  causes of action alleging violations of Labor Code 1198.5, enacted in 2000;[8] and the sixteenth

19  cause of action alleging violations of California Business and Professions Code § 17200, enacted

20  in 1977.[9]  (Mot. 14-17; Opp'n 3-4.)  Because each of these claims rely on state law that was first

21  recognized or enacted after Yosemite National Park became a federal enclave in 1920, the Court

22  finds that causes of action one, two, three, five, six, seven, eight, nine, ten, eleven, fourteen,

---

[4] Taylor v. Lockheed Martin Corp., 78 Cal. App. 4th 472, 482-83 (Cal. Ct. App. 2000) (noting "[t]he predecessor statutes of FEHA were contained in the Fair Employment Practices Act, which was not enacted until 1959").

[5] See Stats. 1984, ch. 1083, § 1; see also Steifel, 497 F.Supp.2d at 1150.

[6] See Stats. 1991, ch. 462, § 4.

[7] See Welch v. Southern California Edison, 2008 WL 11411478, at *3 (C.D. Cal. Oct. 29, 2008) (citing Bowden v. Speigel, Inc., 96 Cal. App. 2d 793 (Cal. Ct. App. 1950)).

[8] See Stats. 2000, ch. 886, § 11.

[9] See Welch, 2008 WL 11411478, at *3 (citing Cal. Bus. & Prof. Code § 17200 (West 2008)).

1  fifteen, and sixteen are presumptively barred by the federal enclave doctrine.[10]

2       Accordingly, the only remaining state law questions are whether Plaintiff's twelfth cause

3  of action for negligent infliction of emotional distress and thirteenth cause of action for negligent

4  hiring, supervision, and retention existed before California ceded the land now comprising of

5  Yosemite National Park to the federal government.

6       2.    Plaintiff's Twelfth Cause of Action for Negligent Infliction of Emotional Distress
             Is Barred by the Federal Enclave Doctrine
7

8       Defendant Aramark argues Plaintiff's twelfth cause of action for negligent infliction of

9  emotional distress claim is also barred by the federal enclave doctrine.  (Mot. 7-8.)  Plaintiff

10 argues it is not barred because the claim falls under California's general negligence statute,

11 California Civil Code section 1714, which was enacted in 1872, well before Yosemite National

12 Park became a federal enclave in 1920.  (Opp'n 2-3.)  In response, Defendant Aramark maintains

13 that negligent infliction of emotional distress is a separate and distinct claim from general

14 negligence and was not recognized until 1980.  (Aramark Reply 3-4.)

15      In line with Defendant Aramark's argument, courts have expressly held that a cause of

16 action for negligent infliction of emotional distress is barred by the federal enclave doctrine if the

17 federal enclave was acquired prior to 1980, which is the date when negligent infliction of

18 emotional distress was first recognized in California as a separate tort claim.  See Cooper v. S.

19 California Edison Co., 170 F. App'x 496, 498 (9th Cir. 2006).[11]  In Cooper, the Ninth Circuit

20 affirmed a district court's grant of summary judgment of a negligent infliction of emotional

21 distress claim which had allegedly occurred within Camp Pendleton, which was acquired as a

22 federal enclave in 1942, because negligent infliction of emotional distress was not recognized as

23 a tort until 1980 in Molien v. Kaiser Foundation Hospitals, 27 Cal. 3d 916 (1980).  Id.; see also

24 Welch, 2008 WL 11411478, at *3 (granting a motion to dismiss a claim for negligent infliction

25 of emotional distress allegedly occurring within Camp Pendleton because it was barred by the

26

27 [10] Given Plaintiff's concession that his second, eleventh, fourteenth, fifteenth, and sixteenth causes of action are
    barred by the federal enclave doctrine, the Court will not consider Defendants' alternative arguments that Plaintiff
    failed to plead facts sufficient to support plausible claims.  (Mot. 10-12.)

28 [11] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 35-3(b).

federal enclave doctrine).

Plaintiff's negligent infliction of emotional distress claim thus relies on state law that was not recognized until sixty years after Yosemite National Park became a federal enclave. Accordingly, the Court finds that Plaintiff's twelfth cause of action for negligent infliction of emotional distress is also barred under the federal enclave doctrine.[12]

3. While Plaintiff's Thirteenth Cause of Action for Negligent Hiring, Supervision, and Retention Is Not Barred by the Federal Enclave Doctrine, Plaintiff Failed to Plead Sufficient Facts to Support his Claim

Plaintiff's thirteenth cause of action for negligent hiring, supervision, and retention is based generally on Defendant Aramark's alleged failure to "conduct an adequate background check into the prospective employee's training and experience." (Compl. ¶ 129.) Defendant argues this cause of action should be dismissed for three reasons: (1) it is barred by the federal enclave doctrine; (2); even if it is not barred by the federal enclave doctrine, Plaintiff has failed to plead facts sufficient to support the claim; and (3) the underlying claim is based on FEHA, which Plaintiff has conceded is barred by the federal enclave doctrine. (Mot. 16, 23.) Plaintiff argues that his thirteenth cause of action for negligent hiring, supervision, and retention is not barred by the federal enclave doctrine because it falls under California's general negligence statute, California Civil Code section 1714, which was enacted in 1872. (Opp'n 2-3.) Further, as to any pleading deficiencies, Plaintiff explains that his complaint, which was originally filed in California State Court before removal by Defendants, was not written with the intention of complying with federal pleading standards and requests leave to amend.

a. Plaintiff's Claim for Negligent Hiring, Supervision, and Retention Is Not Barred by the Federal Enclave Doctrine

Plaintiff proffers no case law to support his argument that negligent hiring, supervision, and retention falls under California's general negligence statute and is therefore not barred by the federal enclave doctrine in the instant action. (Opp'n 2.) Defendant Aramark argues that no liability for negligent hiring, supervision, and retention existed before <u>Gettemy v. Star House</u>

---

[12] The Court will therefore not address Defendant's alternative argument that Plaintiff failed to plead facts sufficient to support a plausible claim for negligent infliction of emotional distress. (Mot. 12-13.)

1    Movers, 225 Cal. App. 2d 636 (Cal. Ct. App. 1964) (abrogated in part by Camargo v. Tjaarda

2    Dairy, 25 Cal. 4th 1235, 1241-42 (2001).  (Mot. 16.)  Defendant provides no other support for

3    this proposition.

4         In Gettemy v. Star House Movers, the California Court of Appeal affirmed a jury verdict

5    holding a general contractor, which had subcontracted the removal of a tree to an independent

6    contractor, liable for the death of the independent contractor's employee who was killed during

7    the tree's removal.  225 Cal. App. 2d at 639-40.  The general contractor's defense on appeal was,

8    in part, that the decedent was employed by the independent contractor and thus the

9    subcontractor's employee could not bring a negligent hiring action against the subcontractor's

10   hirer.  Id. at 643.  However, the Court held the applicable rule was provided in section 413 of the

11   Restatement of Torts, which states:

12              One who employs an independent contractor to do work which the
              employer should recognize as necessarily creating, during its
13            progress, conditions containing an unreasonable risk of bodily
              harm to others unless special precautions are taken, is subject to
14            liability for bodily harm caused to them by the absence of such
              precautions, if the employer (a) fails to provide in the contract that
15            the contractor shall take such precautions * * *, or (b) fails to
              exercise reasonable care to provide in some other manner for the
16            taking of such precautions.  (Emphasis added.)

17   Id. at 643 (citing Woolen v. Aerojet Gen. Corp., 57 Cal. 2d 407, 410 (1962), overruled by

18   Privette v. Superior Ct., 5 Cal. 4th 689 (1993)).  Specifically, the Court rejected the general

19   contractor's defense because "the reference to 'others,' in that quotation, includes reference to

20   employees of an independent contractor."  Id.  Relying on section 413 and the California

21   Supreme Court's now-overruled interpretation in Woolen v. Aerojet Gen. Corp., the Court in

22   Gettemy determined the evidence was sufficient to support the jury's finding that the general

23   contractor negligently employed the subcontractor to remove the tree, a task which the general

24   contractor "should have known would unnecessarily create an unreasonable risk to the

25   employees of [the independent contractor], unless special precautions were taken."  Id. at 643.

26        Contrary to Aramark's proposition that Gettemy is the first recognized case of negligent

27   hiring, supervision, and retention in California, the Court finds on these facts that Gettemy's

28   holding was instead novel for the proposition that an employee of an independent contractor may

1    sue the hirer of the independent contractor for negligent hiring.  Here, Plaintiff's claim in the

2    instant action is not analogous to the theory of negligent hiring accepted in <u>Gettemy</u>.  Defendant

3    Aramark admits it "employed Plaintiff and his manager in Yosemite."  (Mot. 16.)  Plaintiff

4    likewise alleges Aramark directly employed him as a cashier at Aramark's business located

5    within Yosemite National Park.  (Compl. ¶ 12.)  Plaintiff otherwise makes no allegations that

6    Aramark's managers and supervisors, who it allegedly negligently hires, supervises, and retains,

7    are independent contractors who employ Plaintiff to trigger similar third-party liability as that in

8    <u>Gettemy</u>.  Accordingly, the Court does not find the theory of third-party liability in negligent

9    hiring applied by the <u>Gettemy</u> Court to be applicable in the instant action.

10        Instead, California courts have long held the view that "an employer may be liable to a

11    third person for the employer's negligence in hiring or retaining an employee who is incompetent

12    or unfit."  <u>Underwriters Ins. Co. v. Purdie</u>, 145 Cal. App. 3d 57, 69 (Cal. Ct. App. 1983) (citing

13    <u>Rahmel v. Lehndorff</u>, 142 Cal. 681 (1904)).  California follows the rule provided in the

14    Restatement Second Agency section 213, which states in pertinent part: "A person conducting an

15    activity through servants ... is subject to liability for harm resulting from his conduct if he is

16    negligent or reckless: ... (b) in the employment of improper persons ... involving the risk of harm

17    to others..."  <u>See id.</u> (citing Rest.2d Agency section 213.)  Specifically, comment d of the

18    Restatement Second Agency reads in part:

19            "The principal may be negligent because he has reason to know
             that the servant ..., because of his qualities, is likely to harm others
20            in view of the work ... entrusted to him.... [¶] An agent, although
             otherwise competent, may be incompetent because of his reckless
21            or vicious disposition, and if a principal, without exercising due
             care in selection, employs a vicious person to do an act which
22            necessarily brings him in contact with others while in the
             performance of a duty, he is subject to liability for harm caused by
23            the vicious propensity.... [¶] *Liability results under the rule ..., not
             because of the relation of the parties, but because the employer
24            antecedently had reason to believe that an undue risk of harm
             would exist because of the employment*...." (Emphasis in original.)

25

26    Id.

27        In line with Plaintiff's general negligence argument, the California Supreme Court

28    recognized the theory that an employer can be liable to a third person for negligently hiring,

1  supervising, or retaining an unfit employee in <u>Rahmel v. Lehndorff</u>, 142 Cal. 681 (1904), which

2  was notably decided sixteen years prior to Yosemite National Park becoming a federal enclave.

3  In <u>Rahmel v. Lehndorff</u>, a waiter assaulted a patron in a restaurant and the patron sued the

4  innkeeper "upon the ground that an innkeeper is bound to protect his guests from acts of violence

5  on the part of his servants." <u>Id.</u> at 683.  While the Court held that the innkeeper was not

6  independently liable, it expressly noted that the patron made no specific allegation "that the

7  defendant was negligent in employing or retaining the waiter who committed the assault." <u>Id.</u> at

8  685.  However, had the patron had made such an allegation, the California Supreme Court

9  explained that:

> [a]n innkeeper is, no doubt, guilty of negligence if he admits to his
> hotel, or permits to remain there, whether as guest or servant, a
> person of known violent and disorderly propensities, who will
> probably assault or otherwise maltreat his guests, and for the
> consequence of such negligence he may be liable in damages.

13  <u>Id.</u> at 685.  California courts therefore acknowledged that employers can be directly liable for

14  negligence for their own failure to exercise ordinary care in employing or retaining an unfit

15  employee prior to Yosemite National Park becoming a federal enclave.

16     Because California's common law recognized a cause of action for negligent hiring,

17  supervision, and retention before California ceded the land comprising of Yosemite National

18  Park to the federal government in 1920, the Court finds that Plaintiff is not barred from bringing

19  a claim for negligent hiring, supervision, and retention claims against Defendant Aramark.

**b.     Plaintiff's Complaint Fails to Plead Facts Sufficient to Support a Claim for Negligent Hiring, Supervision, and Retention**

22     Defendant Aramark argues that even if Plaintiff's claim is not barred by the federal

23  enclave doctrine, the Court should reject Plaintiff's conclusory allegations contained within his

24  thirteenth cause of action for failing to allege any facts that Aramark engaged in negligent hiring,

25  supervisory, or retention practices.  (Mot. 21.)  Defendant Aramark emphasizes that Plaintiff's

26  allegations fail to identify any employees that Aramark negligently hired and supervised, or how

27  Aramark should have known the unnamed employees were unfit.  (Mot. 23.)  In response,

28  Plaintiff acknowledges that his complaint is deficient; however, he explains the deficiency is

1  because his complaint was written for California state court, not because he lacks information or

2  ability to plead sufficient facts.[13]  (Opp'n 3.)  Plaintiff requests leave to amend his complaint to

3  comport with federal pleading standards and to plead further negligence theories which were

4  previously excluded from Plaintiff's state court complaint.  (Opp'n 3.)

5         As previously discussed, "an employer may be liable to a third person for the employer's

6  negligence in hiring or retaining an employee who is incompetent or unfit."  Underwriters Ins.

7  Co., 145 Cal. App. 3d at 69.  Negligence liability will be imposed upon the employer if it "knew

8  or should have known that hiring the employee created a particular risk or hazard and that

9  particular harm materializes."  Doe v. Capital Cities, 50 Cal. App. 4th 1038, 1054 (Cal. Ct. App.

10  1996).

11         Plaintiff's complaint sets forth conclusory statements regarding Aramark's failure to hire,

12  train, and supervise unnamed managers and supervisors to ensure they were qualified, able to

13  follow unspecified California laws, and would refrain from engaging in discriminatory conduct.

14  (See Compl. ¶¶ 129-34.)  However, Plaintiff alleges no supporting facts to allow this Court to

15  infer that Aramark engaged in any of these alleged negligent hiring, supervisory, or retention

16  practices.  Plaintiff does not proffer a single factual allegation in his complaint that identifies

17  which employee Aramark hired who had hazardous proclivities, or how Aramark knew or should

18  have known that the unnamed employee was incompetent or unfit.  See Doe, 50 Cal. App. 4th at

19  1054.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

20  statements" are insufficient to state a cognizable claim.  Iqbal, 556 U.S. at 678.  Because

21  Plaintiff's complaint fails to allege sufficient facts to state a plausible negligent hiring,

22  supervision, and retention claim, the Court recommends granting Defendant's motion to dismiss

23  as to Plaintiff's thirteenth cause of action with leave to amend.

24  ///

25  ///

26

27  [13]  While pleading standards are somewhat different between federal court and California, Plaintiff's argument is
not as well taken.  Much of the "lack of pleading" as articulated by the Defendants centers around a lack of facts,
28  which is a concept and standard still common to both jurisdictions.

1
2

**c.**   **Plaintiff's Negligent Hiring, Supervision, and Retention Claim Is Barred by the Federal Enclave Doctrine to the Extent It Is Based on FEHA Violations**

3   Defendant also argues that the underlying conduct alleged in Plaintiff's negligent hiring,
4   supervision, and retention claim is discrimination, harassment, and retaliation based on a
5   protected class under FEHA.  (Mot. 23.)  Defendant asserts that any claim based on FEHA is
6   barred by the federal enclave doctrine in this action and therefore should be dismissed without
7   leave to amend.  (Id.; Opp'n 4.)  While Plaintiff concedes his FEHA claims are barred, Plaintiff
8   failed to directly address this argument in his opposition.

9   As described above, Plaintiff fails to allege any facts sufficient to support a claim for
10   negligent hiring, supervision, and retention.  Plaintiff repeatedly references Aramark's alleged
11   failure to hire, supervise, or train its unnamed employees to "follow California law," "not
12   discriminate, harass, etc. other employees based upon their disability," or refrain "from engaging
13   in discriminatory conduct," which certainly appears to allege conclusory legal statements based
14   on a protected class under FEHA.  (Compl ¶¶ 129-33.)  However, Plaintiff also alleges
15   Defendant Aramark "failed to conduct an adequate background check into the prospective
16   employee's training and experience such that the people Employers hired were qualified or
17   competent to undertake the responsibilities required when working their respective job
18   positions."  (Compl ¶ 129.)  While this latter claim is conclusory and devoid of any factual
19   allegations, it appears to allege a general negligent hiring claim that is not based on Plaintiff's
20   admittedly barred FEHA claims.  The Court finds Plaintiff simply failed to plead any facts
21   sufficient to support any cause of action against Defendant for negligent hiring, supervision, and
22   retention, whether the claim is based on FEHA violations or not.

23   Accordingly, the Court recommends granting Defendant Aramark's motion to dismiss
24   Plaintiff's thirteenth cause of action with leave to amend.  The Court finds that Plaintiff's
25   negligent hiring, supervision, and retention claim, to the extent that it is based on FEHA, is
26   barred by the federal enclave doctrine.  However, the Court recommends granting leave to
27   amend to the extent that Plaintiff can allege a plausible claim that Aramark engaged in negligent
28   hiring, supervision, and retention independent from any alleged FEHA violations.

1    In both his opposition and at the hearing held in this matter on September 27, 2023,

2  Plaintiff also requested leave to amend to plead further negligence theories not contained in the

3  complaint.  (Opp'n 3.)  However, when asked by the Court at the hearing to proffer another

4  negligence theory that Plaintiff intended to plead, Plaintiff's counsel could not articulate any

5  such theory or provide any facts to support a general negligence claim against any Defendant.

6  Accordingly, the Court finds no basis to grant Plaintiff's request for leave to amend to assert

7  additional causes of action for other negligence theories.  The Court recommends granting leave

8  to amend Plaintiff's thirteenth cause of action limited to a negligent hiring, supervision, and

9  retention claim and to the extent that such a claim is not based on an underlying claim that is

10  barred by the federal enclave doctrine.

11

12    **C.    Plaintiff's Complaint Fails to Plead Sufficient Facts to Support his Fourth Cause of Action for Retaliation in Violation of the FMLA**

13    Plaintiff's fourth cause of action alleges retaliation in violation of the Family Medical

14  Leave Act ("FMLA") pursuant to 29 U.S.C. § 2601. [14]  "The FMLA creates two interrelated,

15  substantive employee rights: first, the employee has a right to use a certain amount of leave for

16  protected reasons, and second, the employee has a right to return to his or her job or an

17  equivalent job after using protected leave."  Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112,

18  1122 (9th Cir. 2001) (citing 29 U.S.C. §§ 2612(a), 2614 (a)).  The FMLA guarantees eligible

19  employees the right to take up to twelve weeks of leave each year for reasons including, but not

20  limited to, serious health conditions that make the employee unable to perform the functions of

21  the employee's position.  29 U.S.C. § 2612(a)(1)(D).

22    Employees may assert two separate claims under the FMLA.  First, an employee may

23  recover damages by showing the employer interfered with, restrained, or denied the employee of

24  his or her right to take FMLA leave.  Post v. John F. Otto, Inc., 2023 WL 2354751, at *4 (E.D.

25  Cal. March 3, 2023) (citing 29 U.S.C. 2615(a)(1).).  Second, an employee may recover for

26

27  [14] Plaintiff also asserts CFRA claims within his FMLA cause of action.  (See Compl. ¶ 50-54).  Although California employees can generally assert separate claims under both FMLA and its "state counterpart," CFRA, Plaintiff's CFRA claims are barred by the federal enclave doctrine in this action.  Xin Liu v. Amway Corp., 347 F.3d 1125,

28  1132 (9th Cir. 2003).

1    damages resulting from retaliation or discrimination for opposing unlawful practices under the

2    FMLA.  Id. (citing 29 U.S.C. 2615(a)(2)).   When an employee is "subjected to 'negative

3    consequences…simply because he has used FMLA leave,' the employer has interfered with the

4    employee's FMLA rights under 29 C.F.R. § 825.220(a)(1)."  Xin Liu, 347 F.3d at 1136 (citing

5    Bachelder, 259 F.3d at 1124.)  However, when an employee is "punished for *opposing* unlawful

6    practices by the employer, the issue then becomes one of discrimination and retaliation" under

7    29 C.F.R. § 825.220(a)(2).  Id.  (Emphasis in original).

8         Defendant Aramark first argues Plaintiff's claim for retaliation in violation of the FMLA

9    consists of contradictory allegations.  (Mot. 18.)  For example, Plaintiff alleges that he "injured

10   his right hip at work" and "was placed on a medical leave of absence" on or about January 1,

11   2022, until he was terminated on February 10, 2023.  (Compl. ¶¶ 13, 18, 20).  However, the

12   specific factual allegations contained in Plaintiff's fourth cause of action allege that:

13           Employers violated the FMLA by unlawfully interfering with,
             restraining, or denying the exercise of Plaintiff's rights by
14           terminating her employment mere weeks before Plaintiff was
             schedule [sic] to commence her 12-week leave to give birth and
15           care for her newborn, an action what [sic] would clearly deter
             employees from exercising their rights under the FMLA.
16
             …Employers terminated Plaintiff's employment on or about
17           December 23, 2021.

18   (Compl. ¶¶ 48, 56.)

19        In his general response, Plaintiff explains that his complaint is inadequately pled for

20   federal court because it was "written with California pleading standards in mind" prior to

21   Defendants' removal to federal court.   (Opp'n 3.)   However, given the clear factual

22   inconsistencies, the Court finds Plaintiff's reasoning to be specious as related to his fourth cause

23   of action.

24        Compounded by the factual inconsistencies, Defendant Aramark argues that Plaintiff's

25   claim should be dismissed because Plaintiff fails to plead any facts to suggest that he ever took

26   FMLA leave.  (Mot. 18.)  However, despite failing to cite a specific provision of the FMLA,

27   Plaintiff expressly states he is asserting a retaliation claim under the FMLA, rather than a claim

28

1   for interference.[15] (Compl. 12-13).  The Ninth Circuit has "clearly determined that 29 U.S.C.

2   2615(a)(1) applies only to employees who oppose employer practices made unlawful by FMLA,

3   whereas, 29 U.S.C. 2615(a)(2) applies to employees who simply take FMLA leave and as a

4   consequence are subjected to unlawful actions by the employer."  Xin Liu, 347 F.3d at 1133, n.7.

5   Accordingly, claims by employees who suffer adverse consequences after requesting or taking

6   FMLA leave are analyzed as an interference claim under 29 U.S.C. 2615(a)(1), not a retaliation

7   claim.  See Post, 2023 WL 2354751, at *4.

8          Contrary to Defendants' argument that Plaintiff's claim should fail because he does not

9   allege that he took FMLA leave, a viable retaliation claim under the FMLA requires that an

10  employee demonstrate that he actually opposed his employer's practices, which are unlawful

11  under the FMLA.  Post, 2023 WL 2354751, at *4.  Here, Plaintiff does not plead any facts

12  demonstrating that he opposed a policy or filed a complaint alleging unlawful practices by

13  Defendant Aramark under FMLA, regardless of whether or not he actually took FMLA leave.

14  Id. (granting summary judgment on a plaintiff's FMLA retaliation claim because the plaintiff

15  failed to show he opposed a policy or filed a complaint against his employer).  Accordingly,

16  because Plaintiff failed to allege that he opposed an action made unlawful by the FMLA, the

17  Court finds Plaintiff failed to plead sufficient facts to support his retaliation claim under the

18  FMLA.

19         In its reply, Defendant Aramark also requests that this Court dismiss Plaintiff's FMLA

20  claim without leave to amend because Plaintiff's leave lasted for more than thirteen months,

21

22  [15] Parsing through the clearly inapplicable factual allegations, the Court notes that Plaintiff's allegation that
    "Employers violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Plaintiff's

23  rights…" is an element of an interference claim under the FMLA.  (Compl. ¶ 48.)  See 29 U.S.C. 2615(a)(1).
    Additionally, to the extent that the Court can discern the relevant facts to the instant action, Plaintiff's complaint

24  also alleges "Employers refused to grant Plaintiff leave to tend to his own serious health condition and/or refused to
    return Plaintiff to the same or comparable job." (Compl. ¶ 55.)  If this statement is intended to be alleged in the

25  instant action, this could also be interpreted as an interference claim.  See Xin Liu, 347 F.3d at 1133, n.7; Lopez-
    Rodriguez v. Kern Med. Surgery Ctr., LLC, 2022 WL 17904540, at *15 (E.D. Cal. Dec. 23, 2022) (citing 29 C.F.R.

26  § 825.220(b)) (explaining "[a]ctions that constitute FMLA interference include refusing to authorize FMLA leave;
    discouraging an employee from taking FMLA leave;…and failing to restore an employee to the same or equivalent

27  position on the employee's return from leave.").  Given the express heading that Plaintiff's fourth cause of action is
    for "retaliation under the [FMLA]" coupled with the inconsistent factual allegations contained within, it is unclear to
    the Court if Plaintiff is conflating interference and retaliation theories or if Plaintiff merely misidentified an

28  interference claim as a retaliation claim.

1   which is longer than the maximum twelve-week period protected by FMLA.  (Aramark Reply 4).

2   Thus, Defendant argues that because Plaintiff's leave was for longer than twelve weeks, he

3   cannot cure his complaint to state a claim for violation of the FMLA based on his termination.

4   (Aramark Reply 5.)  In support of its argument, Defendant cites Hands v. Advanced Critical Care

5   – Los Angeles, Inc., 2015 WL 114185 (C.D. Cal. Jan. 8, 2015), which dismissed a plaintiff's

6   FMLA claim for failure to reinstate the plaintiff to her pre-leave position upon her return to work

7   after finding she took forty-one weeks of leave, which was outside the statutory protections of

8   the FMLA.  Id. at *5.  Defendant also cites Hibbs v. Dept. of Human Resources, 152 Fed. Appx.

9   648 (9th Cir. 2005), which explained that "[t]he protections of the FMLA—entitling an

10  employee to return to his job as if he had never left, with equivalent pay, benefits and other terms

11  of employment—do not survive the expiration of the twelve-week period."  Id. at 649.  Plaintiff

12  fails to address this argument in his opposition.

13          Despite Plaintiff's failure to allege any relevant factual allegations, the Court interprets

14  Plaintiff's fourth cause of action to be one alleging "retaliation in violation of the [FMLA]."

15  (Compl. 12-13.)  As specifically noted by Defendant Aramark, Plaintiff failed to allege that he

16  requested or took FMLA leave.  (Mot. 18.)  The Ninth Circuit found that the plaintiff in Hibbs

17  failed to present "any evidence to support his contention that he was fired in retaliation for taking

18  FMLA leave."  152 Fed. Appx. at 650.  Further, the Hands plaintiff was asserting a theory of

19  retaliation "for taking her FMLA leave or for not accepting a demotion."  2015 WL 114185, at

20  *3.  Thus, an essential fact that both the Hibbs and Hands plaintiffs alleged was that they took

21  FMLA leave.  Plaintiff has not plead a parallel allegation in the instant matter.   The Court thus

22  interprets Plaintiff's claim as one for retaliation, which requires a showing that he opposed a

23  policy or filed a complaint alleging unlawful practices by Aramark under the FMLA.[16]

24  Accordingly, the Court recommends granting Defendant's motion to dismiss Plaintiff's fourth

25  cause of action with leave to amend.

26

27  [16] The Court reiterates that it is relying on Plaintiff's heading that his fourth cause of action is for retaliation under the FMLA.  (Compl. 12-13.)  To the extent that Plaintiff mislabeled his claim and intended to assert a claim for interference, or his claim is for retaliation for taking FMLA leave—which, as discussed, the Court must analyze as

28  an interference claim—Defendant Aramark's argument is well taken.

1    **D.      Defendant Kendall Wright's Request for Dismissal**

2    Defendant Kendall Wright argues she should be dismissed from the instant action

3    because she is only individually named in Plaintiff's seventh cause of action for harassment

4    under FEHA and eleventh cause of action for intentional infliction of emotional distress, which

5    Plaintiff concedes are both barred by the federal enclave doctrine and cannot be amended.

6    (Wright Reply 2.)  As previously discussed, the Court recommends dismissing Plaintiff's seventh

7    and eleventh causes of action with prejudice.  The Court therefore also recommends granting

8    Defendant Kendall Wright's motion to dismiss Wright as a named defendant in the instant action

9    with prejudice.

10   **E.      The Court Recommends Leave to Amend for the Fourth and Thirteenth
11            Causes of Action.**

12   Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

13   given when justice so requires," because "the court must remain guided by the underlying

14   purpose of Rule 15 … to facilitate decisions on the merits, rather than on the pleadings or

15   technicalities."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and

16   internal quotation marks omitted).  Nevertheless, a district court need not grant leave to amend

17   where the amendment would unduly prejudice the opposing party, cause undue delay, or be

18   futile, or if the party seeking amendment has acted in bad faith.  Leadsinger, Inc. v. BMG Music

19   Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

20   "The decision of whether to grant leave to amend nevertheless remains within the discretion of

21   the district court."  Id.

22   It is undisputed that Plaintiff's first, second, third, fifth, sixth, seventh, eighth, ninth,

23   tenth, eleventh, twelfth, fourteenth, fifteenth, and sixteenth causes of action are barred by the

24   federal enclave doctrine and cannot be amended.  As to Plaintiff's fourth and thirteenth causes of

25   action for retaliation under the FMLA and negligent hiring, supervision, and retaliation, the

26   Court finds Plaintiff has not acted in bad faith and it would not prejudice Defendant Aramark or

27   be futile to grant another opportunity to cure deficiencies in the complaint.  The Court therefore

28   recommends that Plaintiff be granted leave to amend the complaint to address the deficiencies in

his fourth and thirteenth causes of action as noted in these findings and recommendations.

**V.**

**RECOMMENDATION AND ORDER**

For all of the above explained reasons, IT IS HEREBY RECOMMENDED that:

1.     Defendants Aramark and Kendall Wright's motion to dismiss Plaintiff's first, second, third, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fifteenth, and sixteenth causes of action, be GRANTED without leave to amend;

2.     Defendant Aramark's motion to dismiss Plaintiff's fourth cause of action be GRANTED with leave to amend;

3.     Defendant Aramark's motion to dismiss Plaintiff's thirteenth cause of action for negligent hiring, supervision, and retention be GRANTED with leave to amend;

4.     Plaintiff's request for leave to amend to plead further negligence theories not contained in his complaint be DENIED; and

5.     Defendant Kendall Wright be dismissed from this action with prejudice.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of these recommendations, the parties may file written objections to the findings and recommendations with the Court.   Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may

///

///

///

///

///

result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014)

(citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 29, 2023**    _____

UNITED STATES MAGISTRATE JUDGE